409 P.2d 727

The STATE of Arizona, Appellee,

v.

Roy David WILLITS, Appellant.*

No. 2 CA–CR 30.

Court of Appeals of Arizona.

Jan. 12, 1966.

Darrell F. Smith, Atty. Gen., Norman E. Green, Pima County Atty., by Carl Waag, Deputy County Atty., Tucson, for appellee.

Alfred J. Rogers, Tucson, for appellant.

KRUCKER, Chief Judge.

The parties will be referred to as they appeared in the lower court.

Defendant, Roy David Willits, was convicted in the Superior Court of Pima County on October 20, 1964, of two counts of aggravated assault committed against Arthelia Willits, defendant's ex-wife, and Kenneth James Willits, his son. From this conviction, defendant appeals on the grounds that prejudicial error was committed by the trial court in admitting testimony regarding alleged prior threats by the defendant to commit suicide, and failure of the trial court to grant a mistrial in view of several references and insinuations made by the prosecution regarding such prior suicide threats. Defendant was acquitted of maliciously attempting to explode dynamite and of the two counts of assault with a deadly weapon. This appeal is from the second trial

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 1576. The matter was referred to this Court pursuant to A.R.S. § 12–120.23.

of this case. In the first trial, defendant was convicted of maliciously attempting to explode dynamite and of two counts of assault with a deadly weapon. The Supreme Court reversed and remanded the case for a new trial. State v. Willits, 96 Ariz. 184, 393 P.2d 274 (1964).

The following summarizes the facts. On the evening of December 29, 1962, defendant went to the home of Mr. and Mrs. Urbano in Tucson where his former wife, Arthelia Willits, and their two children were then residing. Defendant's purpose was to talk to and persuade Arthelia to attempt a reconciliation. He also wanted to see his children. There had been considerable controversy between Arthelia and defendant on the matter of his right to visit the children. She had been awarded their custody. On the evening in question he was determined to see the children and, according to his own testimony, was prepared to take "desperate" measures.

He carried with him into the Urbano home a home-made device which, by turning two switches, would be exploded in two stages, a triggering one followed by a powerful blast of dynamite. Defendant's uninvited visit ended in a scuffle with Arthelia, during which the blasting device's trigger stage exploded without, fortunately, detonating the principal blast. As a result, their children suffered minor injuries and inconsequential damage occurred to certain household furnishings.

The basic question presented in this appeal is whether the trial court committed prejudicial error in refusing to grant defendant's motions for a mistrial because (1) the prosecutor's questions to the defendant and other witnesses repeatedly implied that (a) defendant had gone to the Urbano home intending to commit suicide, and (b) he previously had threatened to commit suicide; and (2) Arthelia had been permitted to testify, over defendant's objection, that one reason for her refusal to allow the defendant to continue to see the children had been his threat, during a telephone conversation with her, to commit suicide and his request the previous Thanksgiving for her to call for the children who, at the time, were visiting him.

■ The only justification for admitting evidence regarding the suicide threat would have been its effect in "completing the story of the crime" which the prosecution is permitted to do as an exception to the general rule, as stated in Udall, Arizona Law of Evidence, 227 and 228, that:

"* * * the prosecution, in a criminal case, may not offer evidence of other unrelated *criminal acts* of the accused where the evidence has only the limited probative value which arises from the fact that one who has once violated the law is more likely to do so again." (Emphasis supplied.)

Our Supreme Court held in State v. Harris, 73 Ariz. 138, 142, 238 P.2d 957, 959 (1951):

"* * * this court has allied Arizona with the minority of states by holding that on cross-examination specific acts of misconduct cannot be shown unless the witness has been convicted of that crime." [1]

■ In Arizona, neither suicide nor a threat to commit suicide is a crime rendering evidence thereof inadmissible under the

---

1. Also see, 1 Wigmore, Evidence, § 194 (3d ed. 1940). Our Supreme Court recognized the general rule regarding evidence of prior crimes, as well as the exceptions thereto, in State v. Akins, 94 Ariz. 263, 265, 383 P.2d 180, 182 (1963) stating: "Evidence tending to show the commission of another crime entirely distinct and independent from that for which the accused is on trial is generally neither relevant nor admissible. We have repeatedly stated, however, the well recognized exception that evidence of other crimes is competent to prove the specific crime charged when it tends to establish motive, intent, the absence of mistake or accident, identity, a scheme or plan common to the commission of two or more crimes so related to each other that proof of one tends to establish the other." (Citing cases)

rule of State v. Harris, supra.[2] In addition, evidence of the prior threat by defendant to commit suicide could only have been admitted if sufficiently related to the act for which defendant was charged so as to complete the story of the crime.

The exception to the general rule known as "completing the story of the crime" has often been labeled "res gestae". See generally, 31A C.J.S. Evidence § 403(1) et seq. (1964); 20 Am.Jur. Evidence § 661 et seq. (1939); and Udall, Arizona Law of Evidence, § 115.

> "While prior disconnected declarations or acts must be excluded, a declaration or an act which, although antecedent in point of time, is preliminary or immediately preparatory to the main fact may be received where it tends to illustrate or give character to the act in question." 31A C.J.S. Evidence § 412 (1964), at pages 1007–1008.

■ The issues before this Court concerns two isolated events, separated by approximately one month. The facts show that defendant threatened to commit suicide during Thanksgiving 1962, and the alleged crime was committed on December 29, 1962. Were evidence available indicating that defendant's mental state, existing at the time the threat to commit suicide was made, continued during this interval prior to the date of the alleged crime, it might then be stated that the threat could "tend to illustrate or give character to the act in question," and therefore be admissible. The record, however, is totally barren of any such evidence. These two events are far too disjointed and disconnected in time and character to "explain or elucidate" the principal event so as to bring it within res gestae exceptions which would admit such evidence. State v. Villavicencio, 95 Ariz. 199, 388 P.2d 245

(1964); State v. Akins, 94 Ariz. 263, 383 P.2d 180 (1963); State v. Kuhnley, 74 Ariz. 10, 242 P.2d 843 (1952); Carter v. State, 18 Ariz. 369, 161 P. 878 (1916). It is our conclusion that the trial court erred in the admission of Mrs. Willits' testimony.

We now approach the basic issue constituting this appeal, i. e., whether defendant was prejudiced by the admission of Mrs. Willits' testimony and the conduct of the county attorney. Article 6, Section 27 of the Arizona State Constitution, A.R.S., provides:

> "No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done."

In State v. Dutton, 83 Ariz. 193, 200, 318 P.2d 667, 671 (1957), the Supreme Court of this State said:

> "In applying this constitutional provision our prior decisions, particularly in Turley v. State, 48 Ariz. 61, 59 P.2d 312 and State v. Singleton, 66 Ariz. 49, at page 66, 182 P.2d 920, at page 930, have laid down this test: had the error pointed out not been committed is there reasonable probability that the verdict might have been different? In answering this question, the members of this court must necessarily put themselves, as nearly as possible, in the position of the jury in order to determine whether, as reasonable men, the error committed probably affected their verdict."

In the Dutton case, the court concluded that the admission of evidence showing that defendant may have committed other crimes was collateral and inadmissible but was not prejudicial and a reasonably minded jury

---

2. Although suicide and attempts to commit suicide were generally considered crimes at common law, 83 C.J.S. Suicide §§ 1 and 2 (1953); 26 Am.Jur. Homicide §§ 84 and 86 (1940); 92 A.L.R. 1180 (1934), neither are crimes in Arizona since, "In Arizona, common law crimes have not survived. There must be a stat-

ute specifically prohibiting the act." Goodman v. State, 96 Ariz. 139, 141, 393 P.2d 148, 149 (1964); Engle and Showell v. State, 53 Ariz. 458, 90 P.2d 988 (1939). Title 13, Criminal Code of Arizona, contains no provisions regarding suicide as a criminal act.

would not have arrived at a different verdict.

To conclude that prejudice did result in this case, it must be argued that if Mrs. Willits' testimony regarding defendant's prior threat to commit suicide had not been admitted, there is reasonable probability that the jury's verdict would have been different. State v. Dutton, supra; Comancho v. State, 39 Ariz. 556, 8 P.2d 772 (1932). In this case, the defendant was charged with attempting to explode dynamite and two counts of assault with a deadly weapon; the jury convicted him of two counts of aggravated assault. The crime of aggravated assault, as defined in A.R.S. § 13–245, is broad in scope and the facts in this case present a situation falling within the purview of this definition. There was evidence before the jury that the defendant did carry dynamite into the Urbano home, that a scuffle resulted, that defendant did throw one of two switches calculated to detonate the device and that the device was detonated. Injury resulted and under these facts, the jury could well conclude that there was sufficient evidence on which to base a conviction of aggravated assault. It can readily be concluded by this court, attempting to put itself, as nearly as possible, in the position of the jury, that the verdict would not have been different had the evidence not been admitted.

The trial court had before it the same question for determination as has been presented to this Court. What, in fact, motivated the jury in arriving at its verdict cannot be determined. The jury was before the trial court during the testimony of Mrs. Willits and the insinuations made by the prosecution, and that court was in a far better position to determine the issue of prejudice than is this Court sitting far removed from the trial environment. In the judgment of the trial court, the admission of this evidence and the conduct of the county attorney were not sufficiently prejudicial to warrant the declaration of a mistrial, and this Court will not substitute its judgment for that of the trial court in the absence of an abuse of discretion. In view of the foregoing, no abuse of discretion is found.

The judgment is affirmed.

HATHAWAY, J., and ROBERT O. ROYLSTON, Superior Court Judge, concurring.

NOTE: Judge John F. Molloy having requested that he be relieved from consideration of this matter, Judge Robert O. Roylston was called to sit in his stead and participate in the determination of this decision.